IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| BENJAMIN WATERS, | * |
|---|---|
| Plaintiff, | * |
| v. | *   Civil Action No. GLR-18-986 |
| DIONNE RANDOLPH, et al., | * |
| Defendants. | * |

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Benjamin Waters' Complaint (ECF No. 1), filed under 28 U.S.C. § 1915(a)(1) (2018), and Motion for Leave to Proceed In Forma Pauperis (ECF No. 2). For the reasons that follow, the Court will grant Waters' Motion and dismiss the Complaint.

### I.  BACKGROUND[1]

An overview of Waters' previous litigation history is necessary for preliminary review of this action. Waters has, on three prior occasions, filed lawsuits in connection with his pretrial detention in Baltimore, Maryland. The first suit, Waters v. Warden, et al. (Waters I), No. BPG-16-3238 (D.Md. filed Sept. 23, 2016), is an ongoing civil rights action for damages against the Baltimore City Booking and Intake Center ("BCBIC"), Warden Dionne Randolph, and BCBIC employees J. Francis, M. Fortcham, P. Jackson, D. Williams, N. Mars, and T. Brown. In Waters I, Waters alleges that the defendants denied him meals on multiple occasions, physically assaulted him, and conducted

---

[1] Unless otherwise noted, the Court describes facts taken from the Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

inappropriate body searches. (2d Am. Compl. at 2, ECF No. 19, Waters I). The Court appointed counsel to represent Waters in that case. (Dec. 17, 2017 Order, ECF No. 55, Waters I).

In the second suit, Waters v. City of Baltimore, et al. (Waters II), No. GLR-17-1113 (D.Md. dismissed July 31, 2017), on June 8, 2017, the Court dismissed without prejudice Waters' allegations of malicious prosecution, assault by officers at the time of his arrest, and the denial of affordable bail to permit the filing of a separate action limited to those claims. (June 8, 2017 Order at 3, Waters II, ECF No. 3). The Court also granted Waters twenty-one days to supplement his Complaint with regard to his claims against Clifton T. Perkins Hospital Center ("CTPHC")[2] personnel, in which Waters alleged that he was wrongfully held at CTPHC and forcibly medicated pending adjudication of his criminal charges. (Id.). On July 31, 2017, the Court dismissed without prejudice Waters' claims against CTPHC because he failed comply with the Court's Order to supplement the Complaint. (July 31, 2017 Order, Waters II, ECF No. 4).

In the third suit, in Waters v. Randolph, et al. (Waters III), No. GLR-17-2960 (D.Md. dismissed Jan. 9, 2018), on October 5, 2017, Waters sued BCBIC, Warden Dionne Randolph, and four BCBIC officers, alleging violations of his civil rights while detained at BCBIC. (Am. Compl. at 3, Waters III, ECF No. 3). Waters also named as defendants Baltimore City Mayor, Catherine Pugh, and Baltimore City Assistant State's Attorneys, Shari Greene and Tracy Varda, who participated in his 2016 criminal

---

[2] CTPHC is a psychiatric hospital administered by the Maryland Department of Health.

2

prosecution on charges of first- and second-degree assault and wearing or carrying a deadly weapon with intent to injure.³ (Id.). On February 10, 2017, the State's Attorney placed Waters' criminal case on the stet docket and Waters was subsequently released from detention. (Jan. 9, 2018 Mem. Op. at 4, ECF No. 5, Waters III).

On January 9, 2018, the Court dismissed Waters III. (Jan. 9, 2018 Order, ECF No. 6, Waters III). The Court dismissed Waters' claims against the BCBIC defendants because they were before the Court in Waters I. (Jan. 9, 2018 Mem. Op. at 5). The Court dismissed the claims against Mayor Pugh because she had no supervisory role over BCBIC operations. (Id. at 5–6). Finally, the Court dismissed Waters' malicious prosecution and false imprisonment claims against Greene and Varda for failure to state a claim. (Id. at 6–7).

On April 5, 2018, Waters filed the instant Complaint against Defendants BCBIC Warden Dionne Randolph, Shari Greene, and Tracy Varda.⁴ (ECF No. 1). In this Complaint, Waters again brings claims against Randolph, this time alleging that she

---

³ "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor of Balt., 791 F.3d 500, 508 (4th Cir. 2015); see Fed.R.Evid. 201(b)(2). In particular, under Federal Rule of Evidence 201, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Accordingly, the Court will take judicial notice of facts from Maryland Judiciary Case Search regarding the 2016 criminal case against Waters in the Circuit Court for Baltimore City, Maryland. See State of Maryland v. Benjamin H. Waters, III, Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (Under "Search By Case Number," select "Baltimore City Circuit Court" and enter case number "116214019"; then select "Get Case.").

⁴ The Court will direct the Clerk to amend the docket to reflect the correct spelling of the names of Assistant State's Attorneys Shari Greene and Tracy Varda.

"operated" BCBIC and "allowed the officers to illegally detain" him from February 10, 2017 through February 13, 2017 after the court had ordered his release on February 10, 2017. (Compl. at 4, ECF No. 1).[5] Waters also alleges that BCBIC "refuse[d] to provide [him] with his preexisting medication when he was first admitted to the jail" and "after many attempts . . . to receive his medication, he was ultimately denied several months later." (Id. at 4–5). "Due to the denial of medical treatment," Waters' health "was compromised." (Id. at 5). Additionally, Waters again brings claims of malicious prosecution and false imprisonment against Greene and Varda. (Id. at 4). Waters seeks money damages, injunctive relief, and an apology from Defendants. (Id. at 6).

## II. DISCUSSION

### A. Standard of Review

Waters filed his Complaint under 28 U.S.C. § 1915(a)(1) (2018), which permits an indigent litigant to commence an action in federal district court without prepaying the filing fee. Under 28 U.S.C. § 1915(e)(2), the Court is required to review civil complaints filed in forma pauperis to determine if the plaintiff alleges cognizable claims. Upon review, if the Court concludes that a claim is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief," the Court must dismiss the complaint. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

---

[5] Citations to the Complaint refer to the pagination assigned by the Court's electronic case management system.

The Court is mindful, however, of its obligation to liberally construe pro se pleadings, such as the instant Complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). In evaluating such a complaint, the Court assumes that the factual allegations are true. Id. at 93 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

Here, Waters does not state under which law or laws he is bringing suit. Given that he alleges that his "civil liberties were trampled," the Court construes his Complaint as bringing claims under 42 U.S.C. § 1983 (2018).

**B.  Analysis**

    **1.  Warden Randolph**

Waters sues Warden Randolph in her personal capacity and in her official capacity. As to Waters' claims against Randolph in her personal capacity, under § 1983, individual liability must be based on personal conduct. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); see also Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting Wright, 766 F.2d at 850). Here, Waters does not allege that Warden Randolph personally participated in violating his constitutional rights.

Waters, therefore, fails to state a claim against Warden Randolph in her personal capacity.

To the extent that Waters names Randolph in her official capacity, his claim is based on her supervisory status as Warden. Waters states that Randolph "operated" BCBIC and "allowed the officers to illegally detain [him] in jail from February 10, 2017 [through] February 13, 2017," even though the court had ordered that BCBIC release him on February 10, 2017. (Compl. at 4). Waters also alleges that BCBIC "refuse[d] to provide [him] with his preexisting medication when he was first admitted to the jail" and "after many attempts . . . to receive his medication, he was ultimately denied several months later." (Id. at 4–5). In essence, Waters pleads a respondeat superior theory of liability. But there is no respondeat superior liability under 42 U.S.C. § 1983. Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Rather, "for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"

It is well-settled, however, that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). Supervisory liability "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Id. (quoting Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984)). To establish supervisory liability, a plaintiff must allege:

6

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (alteration in original) (quoting Shaw, 13 F.3d at 799).

Here, as to Waters' allegation that he was held at BCBIC after the court ordered his release, Waters' asserts that Randolph "operated" BCBIC and that she "allowed the officers to illegally detain" him. (Compl. at 4). Waters does not, however, allege that Randolph actually or constructively knew the outcome of Waters' court case, yet expressly or tacitly allowed BCBIC officers to continue Waters' detention after his court-ordered release. Shaw, 13 F.3d at 799. Nor has Waters alleged facts that suggest Randolph's response to such knowledge was "so inadequate as to show deliberate indifference." Baynard, 268 F.3d at 235 (quoting Shaw, 13 F.3d at 798). Finally, Waters does not plead "an affirmative causal link" between Randolph's inaction and his alleged injuries.

Waters' allegations that he was denied his medication fail for similar reasons. Although Waters states that his health "was compromised," (id. at 5), because he was denied medical treatment—an affirmative causal link—Waters does not allege that Randolph had actual or constructive knowledge that BCBIC refused to provide him his medication. Shaw, 13 F.3d at 799. Nor does Waters plead facts alleging that Randolph

7

either deliberately or tacitly authorized such practices. Id. In short, Waters pleads no basis for supervisory liability.

Thus, the Court concludes that Waters fails to state a § 1983 claim against Warden Randolph. The Court will, therefore, dismiss Waters' claims against Warden Randolph.

### 2. Assistant State's Attorneys Varda and Greene

Waters sues Assistant State's Attorneys Varda and Greene in their personal and official capacities for malicious prosecution and false imprisonment. Prosecutorial activities that are "'intimately associated with the judicial phase of the criminal process' are absolutely immune from civil suit." Safar v. Tingle, 859 F.3d 241, 248 (4th Cir. 2017) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Such activities include the "decisions regarding 'whether and when to prosecute.'" Springmen v. Williams, 122 F.3d 211, 213 (4th Cir. 1997) (quoting Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996)).

Here, Waters alleges that Greene and Varda were "two officers of the court . . . that were assigned to my case [and] held me in jail for seven months without merit and just cause." (Compl. at 3). Waters does not allege that Greene and Varda were in any way acting outside of their roles as prosecutors. Further, Greene and Varda placed Waters' case on the stet docket, which "was at the core of [their prosecutorial] responsibilities" because it was related to "whether to proceed with a prosecution." See Springmen, 122 F.3d at 213; see also Franklin v. Office of Balt. City State's Atty., No. WDQ-14-2356, 2015 WL 799416, at *4 (D.Md. Feb. 24, 2015) (concluding that prosecutors who decided to nolle prosequi the criminal charges against the plaintiff were entitled to absolute immunity). Thus, the Court concludes that Varda's and Greene's

8

actions are entitled to absolute immunity. Accordingly, the Court will dismiss Waters' claims against them.

In sum, Waters fails to state § 1983 claims against any of Defendants. Accordingly, the Court will dismiss the Complaint.

### III.     CONCLUSION

For the foregoing reasons, the Court will dismiss Waters' Complaint (ECF No. 1). A separate order follows.

Entered this 29th day of May, 2018

/s/
George L. Russell, III
United States District Judge